```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION
```

| | |
|---|---|
| DEANNA SUMMERS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )    No. 1:09 CV 179 DDN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner | ) |
| of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the applications of plaintiff Deanna Summers for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

## I. BACKGROUND

Plaintiff was born on July 1, 1985. On July 21, 2006, she filed her applications, alleging a February 1, 2006 onset date, and alleging disability based on back problems, anxiety, and asthma. (Tr. 12, 83-85, 166.) Her claim was denied, and on October 25, 2006, she requested a hearing before an ALJ.[1] (Tr. .)

On July 8, 2008, following two hearings before an ALJ, plaintiff was found not disabled. (Tr. 10-18.) On November 16, 2009, the Appeals Council denied her request for review. (Tr. 2-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

---

[1]Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906, 404.966 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

## II. MEDICAL HISTORY

On September 26, 2006, plaintiff saw medical consultant James Spence, Ph.D., for a Mental Residual Functional Capacity (RFC) Assessment. At that time she reported her most significant problems were with anger and anxiety. Dr. Spence opined that plaintiff would have no more than moderate limitations in some areas of mental functioning. Dr. Spence diagnosed depression and provided a supporting narrative discussion. He noted that plaintiff had never been put on medications. Plaintiff stated that she did not trust doctors or medications and therefore would not take medications. She was able to care for her children without difficulty. Dr. Spence opined that she was capable of simple, repetitive tasks away from the public. (Tr. 148-50.)

On October 16, 2006, plaintiff was treated in the emergency room at Poplar Bluff Regional Medical Center for complaints of back pain. (Tr. 275-80.) She was treated with Toradol, a prescription nonsteroidal anti-inflammatory drug (NSAID), and Norflex, a muscle relaxant. She refused local injections for her pain. (Tr. 275.) The clinical impression was chronic low back pain and acute lumbar myofascial strain. (Tr. 280.)

Plaintiff first saw Jeff Till, LCSW, at the Kneibert Clinic in Poplar Bluff, Missouri, for psychotherapy in December 2006. (234-35.) She was under considerable distress due to her husband's leaving the area and harassment by her husband's family. (Tr. 234.) Mr. Till's tentative diagnosis was major depressive disorder. He opined she would have considerable improvement with medication. She saw Debra Price, a psychiatric nurse practitioner (NP), at the Kneibert Clinic, for medication management. (Tr. 221-22.)

The record includes a medication management and mental health evaluation report from NP Price on December 27, 2006 and a medication management progress note on January 10, 2007. (221-22, 229-33.) On both occasions, NP Price described plaintiff's depressed mood as "moderate."

Plaintiff was seen on April 30, 2007 at the Kneibert Clinic for chronic back pain. Examination showed some tenderness and muscle spasm, but no sensory, motor, strength, or reflex deficits. (Tr. 255-56.)

X-rays and an MRI taken between October 2006 and January 2007 showed no abnormalities in the cervical, lumbar, or thoracic spine, with the

exception of a small disc protrusion in the thoracic spine which was not in contact with the spinal cord and was not contributing to significant canal stenosis or narrowing. (Tr. 242-48.)

On June 9, 2007, clinical psychologist Jonathan D. Rosenboom, Psy.D., conducted a psychodiagnostic interview and test at the request of the State agency. (Tr. 257-65.) Plaintiff reported that she was not currently taking any psychoactive medications, although she said that she had been prescribed Cymbalta, an anti-depressant, three months earlier. (Tr. 257.) She reported smoking two packs of cigarettes per day and drinking over a gallon of iced tea per day. (Tr. 259.) She also reported that she has "two kids and I feel like my whole life is gone in front of me. Like I've lost my childhood and everything. I want to go out and do what I want to do, but my kids are keeping me back from doing it." (Tr. 258.)

Dr. Rosenboom interpreted plaintiff's answers to the Folstein Mini Mental State Exam, used to screen adults for the gross signs of neurocognitive impairment, to show that she was "perfectly oriented" in all areas, she was articulate, and used appropriate grammar and vocabulary. (Tr. 260.) She was awake, alert, attentive, and her immediate auditory memory was unimpaired. (Tr. 260.) Her delayed auditory recall was slightly impaired and her concentration was good. (Tr. 260-61.)

Dr. Rosenboom opined that plaintiff's results on the Miller Forensic Assessment of Symptoms Test (M-FAST), a test to provide clinicians with a reliable and valid screen for malingered mental illness, were highly suggestive that she was malingering mental illness symptoms. (Tr. 261.) As a result, Dr. Rosenboom's principal diagnosis was malingering. (<u>Id.</u>) Dr. Rosenboom opined that plaintiff's ability to understand, remember, and carry out instructions was not impaired by her mental disorder. (Tr. 262.) He further opined that plaintiff's ability to respond appropriately to work supervisors, co-workers, and work stressors was moderately impaired by her depressive disorder. (Tr. 262.)

On July 2, 2007, Dr. Rosenboom completed an MSS - Mental in which he opined that plaintiff's depressive distress "moderately" impaired her functioning in the areas of interacting appropriately with the public;

interacting appropriately with supervisors; interacting appropriately with co-workers; and responding appropriately to usual work situations and to changes in routine work setting. (Tr. 264.)

On August 30, 2007, plaintiff saw Dr. Satterly[2] for neck and low back pain. Dr. Satterly noted that plaintiff was alert, pleasant, and cheerful, and her mood, affect, and judgment were normal. Her only medication was Naproxen, a NSAID. (Tr. 266.)

In March 2008, Mr. Till and psychiatrist Naveed J. Mirza, M.D., of the Kneibert Clinic, completed a MSS - Mental in which they opined that plaintiff had marked or extreme limitations in 20 areas, including remembering and carrying out short, simple instructions; maintaining attention and concentration for extended periods; performing activities within a schedule and maintaining regular and punctual attendance; sustaining an ordinary routine without special supervision; working in coordination with others without being distracted; making simple work related decisions; completing a normal workday or workweek without interruptions from psychologically based symptoms; interacting appropriately with the public, supervisors, and coworkers; maintaining socially appropriate behavior; responding appropriately to changes in a work setting; and setting realistic goals independently of others. (Tr. 270-72.)

**Testimony at the Hearing**

On March 20, 2007 and April 17, 2008, plaintiff appeared and testified to the following at hearings before an ALJ. (Tr. 302-45.) Plaintiff completed the seventh grade and was home schooled for two years thereafter. (Tr. 307.) For much of the relevant period, plaintiff lived alone with her two small children, although she sees her parents, who assist with her children, frequently. (Tr. 306-10.) At the time of the second hearing, she was living with her husband and their two children. (Tr. 323.)

Plaintiff has problems with her back, resulting in her getting upset for no reason and taking it out on people. (Tr. 309, 328-29.) She

---

[2]Dr. Satterly's full name is not evident from the record.

cannot pick up her 25-pound son without back pain. (Id.) Every time she has attempted to work her back pain was so bad she could not hold her job. (Tr. 310.) She has difficulty sitting, walking, and standing. (Tr. 312.) She has asthma and experiences panic attacks. (Tr. 313.)

She sees Mr. Till for psychotherapy twice a week, as well as Ms. Price for medication management. She cannot remember the names of her prescription medication. She can hardly eat or sleep and is losing weight. (Tr. 313.) She cries a lot. She is able to take care of her children and her house, although her parents help a lot with her children. (Tr. 315-16.) At the conclusion of the hearing, the ALJ ordered a psychological evaluation.

Vocational Expert (VE) Thomas Upton testified at the second hearing. (Tr. 337-45.) The ALJ assumed a hypothetical individual with no past relevant work (PRW), with the same age, education, and work experience, and the mental RFC of plaintiff provided by Drs. Spence and Rosenboom. The VE testified that such an individual would have work available in occupations such as assembler, hand packager, and production inspector. (Tr. 338-40.)

Assuming a hypothetical individual with the mental RFC provided by Dr. Mizra and Mr. Till, the VE testified that no work would be available. (Tr. 341.)

### III. DECISION OF THE ALJ

On July 8, 2008, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. (Tr. 10-18.) The ALJ found that plaintiff had not engaged in substantial gainful activity since July 21, 2006, her application date. The ALJ found that plaintiff had the severe impairments of a depressive disorder and lumbar myofascial strain, but did not have an impairment or combination of impairments that met or equaled a listing in 20 C.F.R. Pt. 404, Subpt. P, App. I, Listing of Impairments. (Tr. 12, 14.)

The ALJ found that plaintiff had the RFC to perform light work, except that she has moderate limitations in understanding, remembering and carrying out detailed instructions; working in coordination with others without being distracted by them; interacting appropriately with

the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers without distracting them or exhibiting behavioral extremes. (Tr. 15-17.) Although plaintiff had no PRW, considering the VE's testimony, the ALJ found that she could perform other work that existed in significant numbers in the national economy. (Tr. 17-18.) Therefore, the ALJ concluded plaintiff was not under a disability as defined under the Act.

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from

a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her PRW. Id. The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred (1) in rejecting the opinion of treating psychiatrist Dr. Mirza; and (2) in assessing her credibility.

**1.  Treating Psychiatrist Dr. Mirza**

Plaintiff argues that the ALJ erred in rejecting the opinion of psychiatrist Dr. Mizra without good cause. This court disagrees.

Plaintiff first saw Mr. Till, a social worker, at the Kneibert Clinic, for psychotherapy in December 2006. (Tr. 234-35.) In March 2008, Mr. Till and Dr. Mirza signed an MSS - Mental in which the 20 areas of mental functioning were checked as either "extreme" or "marked." (Tr. 271-72.)

As a social worker, Mr. Till is not an acceptable medical source, and his opinion is not eligible for controlling weight under the treating source rule. See 20 C.F.R. §§ 416.913 and 416.927; SSR 06-3p (a social worker is not an "acceptable medical source" who can provide a treating source medical opinion, but is an important "other" medical source whose opinion the ALJ must consider). While Dr. Mirza is an acceptable medical source, there is no record evidence that he ever examined plaintiff. In fact, plaintiff testified at a hearing that she did not think she had ever seen Dr. Mirza. (Tr. 349.)

Moreover, there is no narrative explanation in the MSS for the marked and extreme limitations noted therein. See e.g., Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (ALJ did not err in refusing

-7-

to give treating doctor's disability checklist or her opinion that claimant was unable to work controlling weight).

The ALJ did not give significant weight to the MSS signed by Mr. Till and Dr. Mirza because it was inconsistent with the treatment notes, plaintiff's own statements regarding her symptoms and limitations, and the credible report of Dr. Rosenboom. (Tr. 16-17.) The ALJ may discredit the opinion of a treating source when it is conclusory, or inconsistent with his or her own notes, or inconsistent with other substantial evidence in the record. See Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (given the inconsistencies between physician's letter and MSS, as well as the lack of supporting objective evidence, the ALJ did not err in discounting physician's opinion).

Based on the foregoing, the court concludes the ALJ provided good, legitimate reasons for not giving the opinions of Dr. Mirza or Mr. Till controlling or substantial weight.

## 2.  Credibility

Plaintiff next makes the general argument that the ALJ erred in assessing her credibility. In support, plaintiff simply argues that the medical notes show that she has "repeatedly had episodes of severe abdominal and back pain." This argument is without merit.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). The ALJ need not explicitly discuss each factor, however. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir.

2005). "It is sufficient if he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." Id.

The ALJ here considered all of plaintiff's symptoms and the extent to which her symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 15.) The ALJ found that plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 15.)

The ALJ noted plaintiff's delay in filing her application, specifically, that she complained of having back pain since the birth of her first child in 2001, yet did not file her application until 2006. (Tr. 15.) The ALJ also noted that the objective medical evidence showed very little in the way of abnormalities. (Tr. 15.) While she was once found to have some tenderness and muscle spasm, she was not found to have any sensory, motor, strength, or reflex deficits. (Tr. 255-56.) There was no indication of abnormal gait or loss of strength and no indication of radiculopathy. (Tr. 16). X-rays and an MRI showed no abnormalities in her spine except for a small disc protrusion in the thoracic spine which was not in contact with the spinal cord and was not contributing to significant canal stenosis or narrowing. (Tr. 16, 242-48.)

Additionally, plaintiff received conservative treatment and was very reluctant to use prescription pain medications. (Tr. 16, 311, 329.) She refused shots for pain when treated in the emergency room despite complaints of severe and chronic pain. (Tr. 16, 275.) See Walker v. Shalala, 993 F.2d 630, 632 (8th Cir. 1993); Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)(conservative treatment and failure to require prescription pain medication is inconsistent with claims of disabling pain).

Also, no limitations have been placed upon her activities due to her back condition. (Tr. 16.) For much of the relevant period, plaintiff lived alone with her two small children. (Tr. 306.) At the time of the second hearing, plaintiff lived with her husband and children and was able to care for her personal needs, care for her two small children with help from her mother, cook, keep house, watch television, read, keep appointments, and occasionally quilt. (Tr. 108, 123, 155-59, 315, 323, 332.)

While the ALJ observed that plaintiff cried at the hearing, she answered questions in a clear and logical manner and did not display outward signs one could reasonably expect to see in an individual suffering from severe mental or physical distress to the point she would be unable to function in all types of work settings. (Tr. 16.) Dr. Rosenboom's impression was malingering. See Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006) (ALJ may draw conclusions from claimant's exaggeration of symptoms in evaluating subjective complaints).

The ALJ gave good reasons for finding plaintiff's subjective complaints not entirely credible. The ALJ can acknowledge subjective complaints, but still find plaintiff not credible as to whether her subjective complaints are disabling. See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (court will not disturb decision of ALJ who considers, but for good cause specifically discredits, the claimant's complaints of disabling pain). Therefore, this court concludes the ALJ's credibility finding was proper.

## VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence on the record and is consistent with the Regulations and applicable law. The decision of the Commissioner of Social Security is affirmed. An appropriate judgment order is issued herewith.

      /S/   David D. Noce
      **UNITED STATES MAGISTRATE JUDGE**

Signed on February 14, 2011.